## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PETTIX MCMILLAN,

      **Plaintiff,**

  v.             **CASE NO. 22-3278-JWL-JPO**

BYRON ALEXANDER, ET AL.,

      **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff Pettix McMillan, a state prisoner who is incarcerated at Lansing Correctional Facility (LCF) in Lansing, Kansas, filed this pro se civil action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights have been violated. The Court conducted an initial review of the complaint and identified deficiencies in the complaint which left it subject to dismissal in its entirety for failure to state a claim on which relief could be granted. Thus, on October 28, 2022, the Court issued a Memorandum and Order to Show Cause (MOSC) directing Plaintiff to file an amended complaint that cured the deficiencies. (Doc. 4.) Plaintiff timely filed his amended complaint on December 23, 2022. (Doc. 9.)

The Court has conducted an initial review of the amended complaint and finds that, like the initial complaint, it is subject to dismissal in its entirety for failure to state a claim on which relief can be granted. The Court will allow Plaintiff a final opportunity to file a complete and proper amended complaint on court-approved forms that states a plausible claim for relief.

### I. Nature of the Matter before the Court

In the amended complaint, Plaintiff names as defendants Byron Alexander, Activities Specialist II at LCF; LCF Deputy Warden James Skidmore; Britt Butler, the Supervisor of

Maintenance for Core Civic, the company Plaintiff asserts is responsible for "mak[ing] sure everything in [LCF] is operational/working correctly"; Kim Tilson, LCF Health Care Administrator; Centurion Health Care (Centurion), which provides medical services to inmates at LCF; and Centurion employees ARNP Bera Karry and Dr. Bryan Wilson, M.D.[1] (Doc. 9, p. 1-3.)

As the factual background for this complaint, Plaintiff alleges that Defendant Alexander is responsible for the maintenance of indoor and outdoor gym equipment at LCF, including weight equipment that was outdoors and not sheltered from the elements. *Id.* at 10, 13. Despite orders from the Kansas Department of Corrections to build a shelter for the equipment, Defendant Alexander ordered that no shelter be built; Defendant Skidmore refused to override that order. *Id.* at 14.

On March 29, 2022, while Plaintiff was using that weight-lifting equipment, a cable snapped, causing approximately 250 pounds to fall onto Plaintiff's forehead and head. *Id.* at 13. He was taken by gurney to the LCF medical clinic, where he received five stitches to close a one-inch laceration on his forehead and was put on a concussion protocol. Plaintiff was not, however, seen again within the next 48 hours, as he asserts the concussion protocols require. *Id.* at 13. Moreover, Defendants Wilson and Karry failed to administer x-rays, an MRI, or a CT-scan. *Id.* at 14. Thereafter, Plaintiff suffered sleeplessness, blackouts, memory loss, dizziness, migraines, nausea, neck pain, light sensitivity, and a loss of cognitive skills, including times when he could not "understand basic communication from others." *Id.* at 2.

At some point, Plaintiff was given an injection of pain medication and told to go back to

---

[1] A handwritten notation at the bottom of page 3 of the amended complaint appears to indicate that "other defendants" are identified in an exhibit attached to the amended complaint. (*See* Doc. 9, p. 3.) That exhibit is 38 pages long, however, and as Plaintiff was advised in the MOSC, the Court will liberally construe pro se pleadings but "will not . . . construct a legal theory on plaintiff's behalf." (Doc. 4, p. 5.) Thus, the Court will not sua sponte identify additional defendants not named in the amended complaint itself.

work. *Id.* at 14. Plaintiff asserts that he was allergic to the medication, which he alleges Defendants knew and which was documented in medical records to which Defendant Wilson had access. *Id.* at 15. On April 14, 2022, while working at KCI Chemical, Plaintiff blacked out, fell, and hit his head on concrete. *Id.* at 13-14. He was unresponsive and was taken to Providence Hospital, where hospital staff determined that he had had "an extreme reaction" to the pain medication and had suffered blunt force trauma resulting in neurological issues that caused his unresponsiveness. *Id.*

When Plaintiff returned to LCF, Defendant Wilson disputed the conclusions of the hospital staff, asserting that Plaintiff's lack of response was not due to neurological issues caused by blunt force trauma, but rather resulted from highly potent chemical fumes. *Id.* at 14. Plaintiff further alleges that he has been diagnosed with post-concussion syndrome, but Defendants are being deliberately indifferent to his medical needs, resulting in Plaintiff suffering severe pain, mental and emotional distress, and causing Plaintiff to fear for his life. *Id.* at 15. Plaintiff also asserts that one or more Centurion employees violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA) by giving Plaintiff's private medical information to LCF staff. *Id.* at 3.

Count I of the amended complaint asserts a violation of Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. 9, p. 4.) As the supporting facts for Count I, Plaintiff alleges that he was deprived "prescribed treatment known to be vital to the arrest and retardation of a life[-]threatening serious illness" despite "numerous sick calls," and that "KDOC staff/warden" informed him that "they can't tell Centurian [*sic*] what to do, and refused to because it's medical." *Id.* Count II alleges a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* As supporting facts, Plaintiff alleges that the deprivation of vital "prescribed treatment" that he could not obtain for himself violated his constitutional rights, especially in light of "Defendant(s) refus[ing] to help plaintiff"

despite his requests for "help from staff." *Id.*

Count III asserts an additional violation of the Eighth Amendment, based on "[t]he acts/actions or omission of acts/actions, committed with deliberate indifference by individuals functioning in specific positions of responsibility and acting under the color of state law, which torture or cause one to live in physical and mental pain or duress and/or threaten the life of any person unnecessarily." *Id.* at 5. Count IV[2] alleges the violation of "the Kansas Statutory components of a confined person[] and violation of [HIPAA]." *Id.* at 6. As supporting facts for Count IV, Plaintiff alleges that he is still suffering from his injuries and that "Centurion" violated HIPAA by sharing specific medical information with KDOC staff so they could deny Plaintiff's claims and grievances. *Id.*

In a separate, typed, "Civil Rights Complaint" that is not on court-approved forms but has been filed with the amended complaint[3], Plaintiff additionally identifies five "issues" and three "causes of action." The "issues" are: (1) the deprivation of "prescribed treatment known to be vital to the arrest and retardation of a debilitating[,] life[-]threatening, serious illness" violated his constitutional due process rights as protected by the Fifth and Fourteenth Amendments; (2) "the deprivation of prescribed treatment known to be vital to the preservation of life" constituted cruel and unusual punishment prohibited by the Eighth Amendment; (3) "[t]he acts, actions, or the omission of appropriate acts or actions, committed with deliberate indifference . . . which torture or cause one to live in physical and mental pain or duress and/or threaten the life of any person unnecessarily" violated the Eighth Amendment; (4) any person who, under color of state law, causes with deliberate indifference the pain, suffering, or torture of a person in his or her care, or places that person in a life-threatening situation, is "guilty of the Kansas Components of

---

[2] This Count is labeled "COUNT III," but is the fourth Count articulated in the amended complaint.
[3] A similar document was filed with the initial complaint. (Doc. 1, p. 7-14.)

Mistreatment of a confined person"; and (5) any governmental entity, or its official or agent, who "fail[s] to cause positive change" of policies or procedures that violate or permit the violation of law or of constitutionally protected rights are "guilty and liable thereof." *Id.* at 15-17.

The "causes of action" Plaintiff identifies in the typewritten complaint are: (1) Defendants violated Plaintiff's right to be free from cruel and unusual punishment, as protected by Article 9 of the Kansas Constitution and the Eighth Amendment to the United States Constitution; (2) Defendants violated Plaintiff's rights under K.S.A. 75-5210 to invoke the grievance procedure; and (3) Defendants violated Plaintiff's due process rights under Articles One and Eight of the Kansas Constitution when they denied him the help he sought through the grievance procedure and, by doing so, violated his Fifth and Fourteenth Amendment rights under the United States Constitution. *Id.* at 17. As relief, Plaintiff requests more than $100,000.00 in compensatory damages from each Defendant; $100,000.00 in declaratory damages from each Defendant; more than $500,000.00 in punitive damages from each Defendant, attorney fees, and court and litigation costs. *Id.* at 18.

## II.  Screening Standards

As with the initial complaint, because Plaintiff is a prisoner, the Court is required by statute to screen his amended complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes a pro se complaint such as this one and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)(quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)(citing *Twombly*, at 550 U.S. at 570).

## III.   Discussion

As with the initial complaint, the amended complaint is subject to dismissal because it and the attachments thereto, even liberally construed, leave unclear the grounds for relief Plaintiff intends to assert. Moreover, although Plaintiff has provided the Court with an abundance of alleged facts, it remains unclear which factual allegations are related to which claim or claims for relief. Thus, Plaintiff has not articulated plausible claims for relief.

As the MOSC explained, "to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). However, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. The MOSC further directed that "Plaintiff must ensure that any amended complaint contains sufficient facts to support his claims." (Doc. 4, p. 7.) It continued:

> For example, Plaintiff asserts in the complaint that someone "[a]dministered [m]edication they knew of severe [a]llergic reaction to[.]" (Doc. 1, p. 12.) But Plaintiff does not allege who administered the medication, when that person did so, specifically how the administration harmed Plaintiff, or particular facts that support the theory that the person knew of Plaintiff's allergy prior to administering the medication. Thus, Plaintiff has failed to state a claim involving the administration of the medication on which relief can be granted.

*Id.* at 7-8.

The amended complaint suffers from a similar lack of specificity. The Court appreciates that the amended complaint adequately identifies which "constitutional rights, privileges or immunities have been violated" for Counts I through IV. Count I concerns the Fifth and Fourteenth Amendments, Count II and Count III concern the Eighth Amendment, and Count IV concerns Kansas state law and HIPAA. (Doc. 9, p. 4-6.) The form complaint also includes a section for each Count that directs Plaintiff to set forth the supporting facts. It states: "Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument." *Id.*

Even liberally construing the amended complaint, the supporting facts Plaintiff has alleged

are not specific enough to state a plausible cause of action. Rather than explaining how each defendant participated in the alleged violation, the supporting facts refer generally to actions by "Defendant(s)." *Id.* Although more specific facts are included in other places in the amended complaint and the more than 100 attached pages, the Court may not act as Plaintiff's advocate and determine on Plaintiff's behalf which factual allegations relate to which asserted Count.[4]

For example, it is not clear whether the "prescribed treatment" Plaintiff was denied that is referred to in Counts I and II was an x-ray, an MRI, a CT scan, pain medication, blood-pressure medication, migraine relief, etc. (*See* Doc. 9, p. 4.) Issues One and Two refer to "prescribed treatment" in a similarly vague fashion. *Id.* at 15-16. The supporting facts for Count III and the articulation of Issue III do not identify any specific acts or omissions by any specific individual, instead making general, conclusory statements. *Id.* at 5, 16. The remaining counts, issues, and causes of action are similarly nonspecific. *See id.* at 5, 16-17. Thus, as with the initial complaint, the amended complaint contains only claims that are not tied to specific supporting facts. (*See* Doc. 4, p. 5.) Considering the high volume of asserted facts in Plaintiff's amended complaint and its attachments, Plaintiff must more clearly articulate which facts support which claim for relief.

The Court pauses to note that the amended complaint also suffers some of the other deficiencies that the Court pointed out in the initial complaint. For example, the MOSC explained:

> [A]n essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, to the extent that Plaintiff asserts that Defendants Alexander and Skidmore are liable because they are "responsible for the actions or inactions of . . . employees under his immediate supervision," (*see* Doc. 1 p. 8) Plaintiff has failed to state a claim on which relief

---

[4] The confusion is further compounded by the inclusion of multiple counts, causes of action, and issues throughout the amended complaint and its attachments.

may be granted. To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). This principle applies with equal force the unnamed Defendant Core Civic Supervisor of Maintenance and Defendant Tilson.

Relatedly, the allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012). Thus, Plaintiff's allegation that "Defendant Skidmore will not override Alexander[']s order to not fix or repair weights," without more, does not state a claim on which relief can be granted.

Similarly, a corporation acting under color of state law can be held liable under § 1983 only for unconstitutional policies and practices. It cannot be held liable under the doctrine of respondeat superior for the individual actions of its employees. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (state prison medical department not a "person" under § 1983); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 738 (S.D. W. Va. 2009); *Dudley v. Food Service-Just Care*, 519 F.Supp.2d 602, 604 (D. S.C. 2007). Because the current complaint does not identify an unconstitutional policy or practice, Defendant Centurion Health is subject to dismissal from this matter.

Next, to the extent that Plaintiff bases his claims on the violation of Kansas statutes, he has failed to state grounds for relief under § 1983, which requires an alleged violation of federal law. "[N]ot every violation of state law or state-mandated procedure is a violation of the Constitution." *See Massey v. Helman*, 259 F.3d 642, 647 (7th Cir. 2001)(citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993)). Thus, any state-law-based claim is subject to dismissal.

(Doc. 4, p. 6-7.)

As noted above, the amended complaint leaves the Court unable to pin down either the precise legal claims in this action or the factual basis for those claims. It appears, however, that the amended complaint may continue to allege that Defendant Skidmore is civilly liable for denying Plaintiff's grievances, which is insufficient to show the personal participation required for liability under § 1983. Similarly, the claim against Defendant Tilson appears to be based on her

supervisory and managerial role as healthcare administrator, not on her personal participation in unlawful acts. The amended complaint also again names Centurion as a defendant but does not identify any unconstitutional policy or practice. Plaintiff is advised that these defendants therefore remain subject to dismissal, as do his state-law claims.

## IV.    Conclusion

For the reasons stated herein, it appears that this action remains subject to dismissal in its entirety for failure to state a claim on which relief can be granted. Plaintiff is therefore given one final opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein. Plaintiff is reminded that a second amended complaint does not supplement either the original or the amended complaint; it completely replaces them. Therefore, any claims or allegations not included in the second amended complaint will not be before the Court. Plaintiff may not refer to an earlier pleading or incorporate it by reference. The second amended complaint must contain all allegations, claims, and exhibits that Plaintiff intends to pursue in this action, including those to be retained from a previous complaint.

Plaintiff must write the number of this case (22-3278) at the top of the first page of his second amended complaint. Therein, he must allege sufficient specific facts to show that each defendant personally participated in a federal constitutional violation, as discussed above. Plaintiff may attach additional pages to the form complaint if necessary to identify additional counts in the section of the form entitled "Cause of Action," but he should not utilize the form complaint only to refer the Court generally to an attached memorandum.

To be clear, Plaintiff must clearly identify each asserted cause of action as Count I, II, III, etc. in the appropriate portion of the form complaint or on an attached page that clearly corresponds to that portion of the form complaint. He must allege specific facts that sufficiently support each

cause of action, including which Defendant or Defendants participated in the alleged violation, how and when they participated in the violation, and any other facts related to the violation. Plaintiff may attach additional pages to the form complaint he will be provided, but any attached pages that allege facts in support of a particular claim must clearly identify which Count they support. If Plaintiff timely files a second amended complaint, the Court will conduct an initial screening and issue further orders as necessary. If Plaintiff fails to timely file a second amended complaint, the Court will proceed on the current amended complaint, which may be dismissed for the reasons stated herein without further prior notice to Plaintiff.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including February 2, 2023, to file a complete and proper second amended complaint to cure all the deficiencies discussed herein. The clerk is directed to send 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

DATED:  This 30th day of December, 2022, at Kansas City, Kansas.

S/ James P. O'Hara

JAMES P. O'HARA
United States Magistrate Judge

11